# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

FILED
CHARLOTTE, NC

SEP 1 2017

U.S. DISTRICT COURT
WESTERN DISTRICT OF NC

| | | |
|---|---|---|
| **FEDERAL TRADE COMMISSION,** | ) | |
| | ) | |
| Plaintiff, | ) | **CASE NO. 3:17-cv-00503-RJC-DCK** |
| | ) | |
| v. | ) | |
| | ) | **PRELIMINARY INJUNCTION AS** |
| **LOMBARDO, DANIELS & MOSS, LLC,** *et al.*, | ) | **TO DEFENDANT DION BARRON** |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, Federal Trade Commission ("FTC"), commenced this civil action on August 21, 2017, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and Section 814(a) of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692*l*(a). On motion by the FTC, on August 24, 2017, this Court entered an *ex parte* temporary restraining order ("TRO") with asset freeze, appointment of receiver, and other equitable relief against Defendants Lombardo, Daniels & Moss, LLC, Dion Barron, and Charles R. Montgomery, III. Previously, the FTC, Receiver, and Defendants Lombardo, Daniels & Moss, LLC and Charles Montgomery stipulated to the entry of a preliminary injunction. On September 1, 2017, this Court held a hearing on an order to show cause why a preliminary injunction should not issue against Defendant Dion Barron.

## FINDINGS OF FACT

This Court, having considered the pleadings, declarations, exhibits, and memoranda, and the arguments presented by the parties, finds that:

1.  This Court has jurisdiction over the subject matter of this case, there is good cause to believe it will have jurisdiction over Defendant Dion Barron.

2. Venue in the Western District of North Carolina is proper under 28 U.S.C. § 1391(b) and (c) and 15 U.S.C. § 53(b).

3. There is good cause to believe that Defendant Dion Barron has engaged and is likely to continue to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FDCPA, 15 U.S.C. §§ 1692 – 1692p, and that the FTC is therefore likely to prevail on the merits of this action.

4. There is good cause to believe that immediate and irreparable harm will result from Defendant Dion Barron's ongoing violations of Section 5(a) of the FTC Act and the FDCPA unless Defendant Dion Barron is immediately restrained and enjoined by Order of this Court.

5. There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers in the form of monetary restitution and/or disgorgement of ill-gotten gains will occur from the transfer, dissipation, or concealment by Defendant Dion Barron of his assets or business records unless Defendant Dion Barron is immediately restrained and enjoined by Order of this Court.

6. Good cause exists for continuing the asset freeze over Defendant Dion Barron's assets and for continuing the receivership over the Receivership Entities.

7. Weighing the equities and considering the FTC's likelihood of ultimate success, this order is in the public interest.

8. No security is required of any agency of the United States for issuance of a preliminary injunction, Fed. R. Civ. P. 65(c).

# DEFINITIONS

A.    **"Assets"** means any legal or equitable interest in, right to, or claim to, any real or personal property, including, without limitation, chattels, goods, instruments, equipment, fixtures, general intangibles, leaseholds, mail or other deliveries, inventory, checks, notes, accounts, credits, contracts, receivables, shares of stock, and all cash, wherever located.

B.    **"Consumer"** means any person.

C.    **"Corporate Defendant"** means Lombardo, Daniels & Moss, LLC and its successors, assigns, affiliates, or subsidiaries, and each of them by whatever names each might be known.

D.    **"Debt"** means any obligation or alleged obligation to pay money arising out of a transaction, whether or not such obligation has been reduced to judgment.

E.    **"Defendants"** means the Individual Defendants and the Corporate Defendant, individually, collectively, or in any combination, and each of them by whatever names each might be known.

F.    **"Document"** is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which the information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

G.    **"Financial Institution"** means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house,

trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

H.     **"Individual Defendants"** means Dion Barron and Charles R. Montgomery, III.

I.     **"Person"** means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

J.     **"Receivership Entities"** means the Corporate Defendant, as well as any other business related to the Defendants' debt collection business and which the Receiver has reason to believe is owned or controlled in whole or in part by any Defendants, including but not limited to Montgomery Financial Solutions, LLC, Franklin Asset Management Group, LLC, Montgomery, Hunter & Associates, Lombardo, Daniels & Moss, Lombardo Group, B&B Asset Management Group, Barron, Gibson & Phillips, Cohen, Daniels & Moss, Murray, Glover & Sellers, or any other debt collection business operated by any Defendant.

K.     The terms **"and"** and **"or"** shall be construed conjunctively or disjunctively as necessary to make the applicable phrase or sentence inclusive rather than exclusive.

**ORDER**

**PROHIBITED REPRESENTATIONS**

I.     **IT IS THEREFORE ORDERED** that in connection with the collection or the attempted collection of any debt, Defendant Dion Barron and his successors, assigns, officers, agents, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service

or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, are hereby restrained and enjoined from:

A.    Misrepresenting, or assisting others who are misrepresenting, expressly or by implication, orally or in writing, any of the following:

    1.    that any consumer is delinquent on a payday loan or other debt that any Defendant or any other person has authority to collect;

    2.    that any consumer has a legal obligation to pay any Defendant or any other person;

    3.    that non-payment of a purported debt will result in a consumer's arrest, or in seizure, garnishment, or attachment of a consumer's property or wages;

    4.    that any Defendant or any other person has taken, intends to take, or has authority to take formal legal action against a consumer who fails to pay any debt;

    5.    that any Defendant or any other person is an attorney or affiliated or associated with an attorney;

    6.    that any Defendant or any other person is a law firm; or

    7.    the character, amount, or legal status of a debt;

B.    Communicating with third parties for purposes other than acquiring location information about a consumer, without having obtained directly the prior consent of the consumer or the express permission of a court of competent jurisdiction, and when not reasonably necessary to effectuate a postjudgment judicial remedy;

C.    Placing telephone calls without meaningfully disclosing the caller's identity;

D.     Failing to disclose or disclose adequately (1) in the initial communication with a consumer that any Defendant or any other person is a debt collector attempting to collect a debt and that any information obtained will be used for that purpose, or (2) in subsequent communications with consumers that any Defendant or any other person is a debt collector;

E.     Threatening to take action that is not lawful or that any Defendant or any other person does not intend to take;

F.     Using any false representation or deceptive means to collect or attempt to collect a debt, or to obtain information concerning a consumer;

G.     Using a business, company, or organization name other than the true name of Defendants' business, company, or organization;

H.     Failing to provide consumers, within five days after the initial communication with a consumer, a written notice containing:  (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by Defendants; (4) a statement that if the consumer notifies Defendants in writing within the thirty-day period that the debt, or any portion thereof, is disputed, Defendants will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by Defendants; and (5) a statement that, upon the consumer's written request within the thirty-day period, Defendants will provide the consumer with the name and address of the original creditor, if different from the current creditor; and

I.      Engaging in any other conduct that violates the FDCPA, 15 U.S.C. §§ 1692-1692p.

## PROHIBITION ON RELEASE OF CONSUMER INFORMATION

II.     **IT IS FURTHER ORDERED** that, except as required by a law enforcement agency, law, regulation or court order, Defendant Dion Barron, and his officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, are restrained and enjoined from disclosing, using, or benefitting from consumer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a consumer's account (including a credit card, bank account, or other financial account), of any person which any Defendant obtained prior to entry of this Order in connection with any debt collection service. *Provided, however,* that Defendant Dion Barron may disclose such identifying information to a law enforcement agency, as required by any law, regulation, or court order, or in any filings, pleadings or discovery in this action in the manner required by the Federal Rules of Civil Procedure and by any protective order in the case.

## ASSET FREEZE

III.    **IT IS FURTHER ORDERED** that:

A.      Except as set forth in Section III.B of this Order, Defendant Dion Barron is hereby restrained and enjoined from directly or indirectly:

1.  Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing

of any funds, real or personal property, accounts, contracts, consumer lists, or any other assets, or any interest therein, wherever located, including outside the United States, that are: (1) owned or controlled, directly or indirectly, by any Defendant(s), in whole or in part, or held, in whole or in part for the benefit of any Defendant(s); (2) in the actual or constructive possession of any Defendant(s); or (3) owned, controlled by, or in the actual or constructive possession of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with any Defendant(s), and any assets held by, for, or under the name of any Defendant(s) at any bank, savings and loan institution, or bank of any Defendant(s), or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, or other financial institution or depository of any kind;

2. Opening or causing to be opened any safe deposit boxes titled in the name of any Defendant(s), or subject to access by any Defendant(s);

3. Incurring charges or cash advances on any credit card, debit card, or checking card issued in the name, singly or jointly, of any Defendant(s);

4. Incurring liens or encumbrances on real property, personal property or other assets in the name, singly or jointly, of any Defendant(s); and

5. Cashing any checks or depositing any money orders or cash received from consumers, clients, or customers of any Defendant(s).

6. The funds, property, and assets affected by this Section shall include: (a) all assets of Defendant Dion Barron as of the time this Order is entered, and (b)

those assets obtained after entry of this Order that are obtained from any debt

collection activities that predate the entry of this Order. This Section does not

prohibit any transfers to the Receiver or repatriation of foreign Assets

specifically required by this order.

B.      Defendant Dion Barron may retain and spend income received from employment

unrelated to debt collection performed after the date of entry of this Order. Further,

Defendant Dion Barron may retain and spend assets acquired by loan or gift after the date

of entry of this Order only after identifying such assets to FTC counsel. This section

does not apply to loans or gifts valued at less than $500

## RETENTION OF ASSETS AND RECORDS BY FINANCIAL INSTITUTIONS AND OTHER THIRD PARTIES

IV.     **IT IS FURTHER ORDERED** that any financial or brokerage institution or depository,

escrow agent, title company, commodity trading company, trust, entity, or person that

holds, controls, or maintains custody of any account or asset owned or controlled, directly

or indirectly, by Defendant Dion Barron, or has held, controlled, or maintained any

account or asset of, or on behalf of, Defendant Dion Barron, upon service with a copy of

this Order, shall:

A.      Hold and retain within its control and prohibit Defendant Dion Barron from

withdrawing, removing, assigning, transferring, pledging, encumbering,

disbursing, dissipating, converting, selling, gifting, or otherwise disposing of any

accounts, assets, funds, or other property that are owned by, held in the name of,

for the benefit of, or otherwise controlled by, directly or indirectly, any

Defendant(s), in whole or in part, except for those identified in Section III.B of

this Order or except as directed by further order of the Court or as directed in

writing by the Receiver regarding accounts, documents, or assets owned by, held in the name of, for the benefit of, or otherwise controlled by, any Receivership Entity;

B.  Deny Defendant Dion Barron access to any safe deposit box titled in the name of any Defendant(s), individually or jointly, or subject to access by any Defendant(s), whether directly or indirectly.

C.  Provide counsel for the FTC and the Receiver, within three (3) business days after being served with a copy of this Order, a certified statement setting forth:

1.  the identification number of each such account or asset titled (1) in the name, individually or jointly, of Defendant Dion Barron; (2) held on behalf of, or for the benefit of, Defendant Dion Barron; (3) owned or controlled by Defendant Dion Barron; or (4) otherwise subject to access by Defendant Dion Barron, directly or indirectly;

2.  the balance of each such account, or a description of the nature and value of such asset as of the close of business on the day on which this Order is served, and, if the account or other asset has been closed or removed, the date closed or removed, the total funds removed in order to close the account, and the name of the person or entity to whom such account or other asset was remitted;

3.  the identification of any safe deposit box that is either titled in the name of Defendant Dion Barron, or is otherwise subject to access by Defendant Dion Barron; and

4.      if an account, safe deposit box, or other asset has been closed or removed, the date closed or removed, the balance on such date, and the manner in which such account or asset was closed or removed.

D.      Provide counsel for the FTC and the Receiver, within three (3) business days after being served with a request, copies of all documents pertaining to such account or asset, including but not limited to originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; provided that such institution or custodian may charge a reasonable fee.

E.      *Provided,* that a financial institution does not have to provide the information required in sub-sections C and D if (1) the financial institution has complied with the similar provision set forth in the TRO; and (2) the information provided has not changed.

**FINANCIAL REPORTS AND ACCOUNTING**

V.      **IT IS FURTHER ORDERED** that Defendant Dion Barron, within three (3) business days of service of this Order, shall prepare and deliver to counsel for the FTC:

A.      A completed financial statement accurate as of the date of service of this Order upon Defendant Dion Barron (unless otherwise agreed upon with FTC counsel) on the form of **Attachment A** to the TRO captioned, "Form Re:  Financial Statement for Individual Defendant."

B.      A completed statement, verified under oath, of all payments, transfers or assignments of funds, assets, or property worth $1,000 or more since January 1,

2015. Such statement shall include: (a) the amount transferred or assigned; (b) the name of each transferee or assignee; (c) the date of the transfer or assignment; and (d) the type and amount of consideration paid Defendant Dion Barron. Each statement shall specify the name and address of each financial institution and brokerage firm at which Defendant Dion Barron has accounts or safe deposit boxes. Said statements shall include assets held in foreign as well as domestic accounts.

C.     *Provided*, that Defendant Dion Barron does not have to provide such financial reports if (1) he has complied with the similar provision set forth in the TRO; and (2) the information provided has not changed.

## CONSUMER CREDIT REPORTS

**VI.**     **IT IS FURTHER ORDERED** that the FTC may obtain credit reports concerning Defendant Dion Barron pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to the FTC.

## REPATRIATION OF FOREIGN ASSETS

**VII.**     **IT IS FURTHER ORDERED** that, within five (5) business days following the service of this Order, Defendant Dion Barron shall:

A.     Provide counsel for the FTC with a full accounting of all assets, accounts, funds, and documents outside of the territory of the United States that are held either: (1) by him; (2) for his benefit; (3) in trust by or for him, individually or jointly; or (4) under his direct or indirect control, individually or jointly;

B.      Transfer to the territory of the United States all assets, accounts, funds, and documents in foreign countries held either: (1) by him; (2) for his benefit; (3) in trust by or for him, individually or jointly; or (4) under his direct or indirect control, individually or jointly;

C.      Hold and retain all repatriated assets, accounts, funds, and documents, and prevent any transfer, disposition, or dissipation whatsoever of any such assets, accounts, funds, or documents; and

D.      Provide the FTC access to all records of accounts or assets of the Corporate Defendant and Individual Defendants held by financial institutions located outside the territorial United States by signing the Consent to Release of Financial Records attached to the TRO as **Attachment C**.

## NON-INTERFERENCE WITH REPATRIATION

VIII.   **IT IS FURTHER ORDERED** that Defendant Dion Barron, and each of his successors, assigns, members, officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any entity, corporation, subsidiary, division, affiliate or other device, are hereby restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by Section VII of this Order, including but not limited to:

A.      Sending any statement, letter, fax, e-mail or wire transmission, telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms

of a foreign trust agreement, until such time that all assets have been fully repatriated pursuant to Section VII of this Order; and

B.    Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time that all assets have been fully repatriated pursuant to Section VII.

## CONTINUATION OF RECEIVERSHIP

IX.    **IT IS FURTHER ORDERED** that Kenneth D. Bell shall continue to serve as Receiver for the business activities of the Receivership Entities with the full power of an equity receiver. The Receiver shall be the agent of this Court and solely the agent of this Court in acting as Receiver under this Order. The Receiver shall be accountable directly to this Court. The Receiver shall comply with any laws and Local Rules of this Court governing receivers.

## DUTIES OF RECEIVER

X.    **IT IS FURTHER ORDERED** that the Receiver is directed and authorized to accomplish the following:

A.    Assume full control of the Receivership Entities by removing, as the Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of any of the Receivership Entities, including any named Defendant, from control of, management of, or participation in, the affairs of the Receivership Entities;

B.    Take exclusive custody, control, and possession of all assets, documents, and electronically stored information of, or in the possession, custody, or under the

control of, the Receivership Entities, wherever situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all assets and documents of the Receivership Entities and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of the Receivership Entities. *Provided, however,* that the Receiver shall not attempt to collect or receive any amount from a consumer if the Receiver believes the consumer was a victim of the unlawful conduct alleged in the complaint in this matter;

C.    Take all steps necessary to secure the business premises of the Receivership Entities. Such steps may include, but are not limited to, the following, as the Receiver deems necessary or advisable:

1.    serving and filing this Order;

2.    completing a written inventory of all Receivership assets;

3.    obtaining pertinent information from all employees and other agents of the Receivership Entities, including, but not limited to, the name, home address, social security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent, and all computer hardware and software passwords;

4.    videotaping all portions of the location;

5.    securing the location by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at that location;

6.    requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises documents or assets of the Receivership Entities; and

7.    requiring all employees, independent contractors, and consultants of the Receivership Entities to complete a questionnaire submitted by the Receiver;

D.    Conserve, hold, and manage all Receivership assets, and perform all acts necessary or advisable to preserve the value of those assets, in order to prevent any irreparable loss, damage, or injury to consumers or to creditors of the Receivership Entities, including, but not limited to, obtaining an accounting of the assets and preventing transfer, withdrawal, or misapplication of assets;

E.    Liquidate any and all assets, securities, or commodities owned by or for the benefit of the Receivership Entities that the Receiver deems to be advisable or necessary;

F.    Enter into or cancel contracts and purchase insurance as the Receiver deems to be advisable or necessary;

G.    Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Entities;

H.    Manage and administer the business of the Receivership Entities until further order of this Court by performing all incidental acts that the Receiver deems to be

advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

I.  Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

J.  Make payments and disbursements from the Receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.  The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Entities prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure assets of the Receivership Entities, such as rental payments;

K.  Determine and implement the manner in which the Receivership Entities will comply with, and prevent violations of, this Order and all other applicable laws, including, but not limited to, revising sales materials and implementing monitoring procedures;

L.  Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts that the Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Entities, or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

M.  Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in his role as Receiver, or against the Receivership Entities, that the Receiver deems necessary and advisable to preserve the assets of the Receivership Entities or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

N.  Continue and conduct the business of the Receivership Entities in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all; *provided, however,* that the continuation and conduct of the business shall be conditioned upon the Receiver's good faith determination that the businesses can be lawfully operated at a profit using the assets of the receivership estate; *provided, further*, that if the Receiver makes the good faith determination that the business of the Receivership Entities cannot be lawfully operated at a profit, the Receiver is directed and authorized to wind up the business affairs of the Receivership Entities, including, where appropriate, liquidating all assets. The Receiver may take any necessary measures to preserve the assets of the receivership estate, including the sale of property and the termination of contracts, including but not limited to leases of business premises;

O.  Take depositions and issue subpoenas to obtain documents and records pertaining to the receivership estate and compliance with this Order. Subpoenas may be served by agents or attorneys of the Receiver and by agents of any process server retained by the Receiver;

P.    Open one or more bank accounts in the Western District of North Carolina as

designated depositories for funds of the Receivership Entities.  The Receiver shall

deposit all funds of the Receivership Entities in such a designated account and

shall make all payments and disbursements from the receivership estate from such

account(s);

Q.    Maintain accurate records of all receipts and expenditures that the Receiver makes

as Receiver;

R.    Cooperate with reasonable requests for information or assistance from any state or

federal law enforcement agency; and

S.    Be responsible for maintaining the chain of custody of all of Defendants' records

in his possession, pursuant to procedures to be established in writing with the

approval of the FTC.

**DEFENDANTS' ACCESS TO PREMISES AND RECORDS**

**XI.**    **IT IS FURTHER ORDERED** that the Receiver shall allow Defendant Dion Barron and

their officers, agents, employees, and attorneys reasonable access to the premises of the

Receivership Entities.  The purpose of this access shall be to inspect, inventory, and copy

any and all documents and other property owned by or in the possession of the

Receivership Entities, provided that those documents and property are not removed from

the premises.  The Receiver shall have the discretion to determine the time, manner, and

reasonable conditions of such access.

## COOPERATION WITH RECEIVER

**XII. IT IS FURTHER ORDERED** that:

A.   Defendant Dion Barron, and his officers, agents, directors, servants, employees, salespersons, independent contractors, attorneys, corporations, subsidiaries, affiliates, successors, and assigns, all other persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, or any of them, shall fully cooperate with and assist the Receiver.  Defendant Dion Barron's cooperation and assistance shall include, but not be limited to:

1.   Providing any information to the Receiver that the Receiver deems necessary to exercising the authority and discharging the responsibilities of the Receiver under this Order, including but not limited to allowing the Receiver to inspect documents and assets and to partition office space;

2.   Providing any username or password and executing any documents required to access any computer or electronic files in any medium, including but not limited to electronically stored information stored, hosted or otherwise maintained by an electronic data host; and

3.   Advising all persons who owe money to the Receivership Entities that all debts should be paid directly to the Receiver.

B.   Defendant Dion Barron and his officers, directors, agents, servants, employees, attorneys, successors, assigns, and all other persons or entities directly or indirectly, in whole or in part, under their control, and all other persons in active

concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from directly or indirectly:

1.  Transacting any of the business of the Receivership Entities;

2.  Destroying, secreting, erasing, mutilating, defacing, concealing, altering, transferring or otherwise disposing of, in any manner, directly or indirectly, any documents, electronically stored information, or equipment of the Receivership Entities, including but not limited to contracts, agreements, consumer files, consumer lists, consumer addresses and telephone numbers, correspondence, advertisements, brochures, sales material, sales presentations, documents evidencing or referring to Defendants' services, debt collection training materials, debt collection scripts, data, computer tapes, disks, or other computerized records, books, written or printed records, handwritten notes, telephone logs, "verification" or "compliance" tapes or other audio or video tape recordings, receipt books, invoices, postal receipts, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, copies of federal, state or local business or personal income or property tax returns, photographs, mobile devices, electronic storage media, accessories, and any other documents, records or equipment of any kind that relate to the business practices or business or personal finances of the Receivership Entities or any other entity directly or indirectly under the control of the Receivership Entities;

3. Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Entities, or the Receiver;

4. Excusing debts owed to the Receivership Entities;

5. Failing to notify the Receiver of any asset, including accounts, of a Receivership Entity held in any name other than the name of the Receivership Entity, or by any person or entity other than the Receivership Entity, or failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such assets;

6. Failing to create and maintain books, records, and accounts which, in reasonable detail, accurately, fairly, and completely reflect the incomes, assets, disbursements, transactions and use of monies by the Defendants or any other entity directly or indirectly under the control of the Defendants;

7. Doing any act or refraining from any act whatsoever to interfere with the Receiver's taking custody, control, possession, or managing of the assets or documents subject to this Receivership; or to harass or to interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Entities; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any Order of this Court; and

8. Filing, or causing to be filed, any petition on behalf of the Receivership Entities for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., without prior permission from this Court.

**DELIVERY OF RECEIVERSHIP PROPERTY**

XIII. **IT IS FURTHER ORDERED** that:

A. Immediately upon service of this Order upon them or upon their otherwise obtaining actual knowledge of this Order, or within a period permitted by the Receiver, Defendant Dion Barron or any other person or entity, including but not limited to financial institutions and electronic data hosts, shall transfer or deliver access to, possession, custody, and control of the following to the Receiver:

1. All assets of the Receivership Entities;

2. All documents and electronically stored information of the Receivership Entities, including, but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, records of ACH transactions, and check registers), client or customer lists, title documents and other papers;

3. All assets belonging to members of the public now held by the Receivership Entities;

4. All keys, computer and other passwords, entry codes, combinations to locks required to open or gain or secure access to any assets or documents of the Receivership Entities, wherever located, including, but not limited

to, access to their business premises, means of communication, accounts, computer systems, or other property; and

5. Information identifying the accounts, employees, properties, or other assets or obligations of the Receivership Entities.

B. In the event any person or entity fails to deliver or transfer immediately any asset or otherwise fails to comply with any provision of this Section XIII, the Receiver may file ex parte with the Court an Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county (pursuant to Fed. R. Civ. P. 4(c)(1)) to seize the asset, document, or other thing and to deliver it to the Receiver.

**COMPENSATION FOR RECEIVER**

XIV. **IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by or in the possession or control of, or which may be received by, the Receivership Entities. The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## RECEIVER'S REPORTS

**XV.** **IT IS FURTHER ORDERED** that the Receiver shall periodically report to this Court regarding: (1) the steps taken by the Receiver to implement the terms of this Order; (2) the value of all liquidated and unliquidated assets of the Receivership Entities; (3) the sum of all liabilities of the Receivership Entities; (4) the steps the Receiver intends to take in the future to: (a) prevent any diminution in the value of assets of the Receivership Entities, (b) pursue receivership assets from third parties, and (c) adjust the liabilities of the Receivership Entities, if appropriate; (5) whether the business of the Receivership Entities can be operated lawfully and profitably; and (6) any other matters which the Receiver believes should be brought to the Court's attention. *Provided, however,* if any of the required information would hinder the Receiver's ability to pursue receivership assets, the portions of the Receiver's report containing such information may be filed under seal and not served on the parties.

## RECEIVER'S BOND

**XVI.** **IT IS FURTHER ORDERED** having appointed a Receiver who is an experienced officer of this Court and subject to the Court's direction, that no bond shall be required.

## STAY OF ACTIONS

**XVII.** **IT IS FURTHER ORDERED** that:

A.      Except by leave of this Court, during pendency of the Receivership ordered herein, Defendant Dion Barron and all other persons and entities be and hereby are stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of, the Receivership Entities, any of their subsidiaries, affiliates, partnerships, assets, documents, or the

Receiver or the Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following actions:

1. Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

2. Accelerating the due date of any obligation or claimed obligation; filing or enforcing any lien; taking or attempting to take possession, custody, or control of any asset; attempting to foreclose, forfeit, alter, or terminate any interest in any asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise;

3. Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not; or

4. Doing any act or thing whatsoever to interfere with the Receiver taking custody, control, possession, or management of the assets or documents subject to this Receivership, or to harass or interfere with the Receiver in any way, or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Entities;

B.    This Section XVII does not stay:

   1.    The commencement or continuation of a criminal action or proceeding;

   2.    The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

   3.    The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or

   4.    The issuance to a Receivership Entity of a notice of tax deficiency; and

C.    Except as otherwise provided in this Order, all persons and entities in need of documentation from the Receiver shall in all instances first attempt to secure such information by submitting a formal written request to the Receiver, and, if such request has not been responded to within thirty (30) days of receipt by the Receiver, any such person or entity may thereafter seek an Order of this Court with regard to the relief requested.

## PRESERVATION OF RECORDS

XVIII. **IT IS FURTHER ORDERED** that Defendant Dion Barron, his officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, are hereby restrained and enjoined from destroying, erasing, mutilating, concealing, altering, transferring, writing over, or otherwise disposing of, in any manner, directly or indirectly, any documents or records of any kind that relate to the business practices, business, or personal finances of any Defendant, including but not

limited to, computerized files and storage media on which information has been saved (including but not limited to floppy disks, hard drives, CD-ROMS, zip disks, punch cards, magnetic tape, backup tapes, and computer chips), and any and all equipment needed to read any such material, contracts, accounting data, correspondence, advertisements (including but not limited to advertisements placed on the Internet), FTP logs, Service Access Logs, USENET Newsgroup postings, Internet pages, books, written or printed records, handwritten notes, telephone logs, telephone scripts, receipt books, ledgers, personal and business canceled checks and check registers, bank statements, appointment books, copies of federal, state, or local business or personal income or property tax returns, and other documents or records of any kind that relate to the business practices, business, or personal finances of any Defendant.

## SERVICE OF THIS ORDER

**XIX.** **IT IS FURTHER ORDERED** that copies of this Order may be served by facsimile transmission, personal or overnight delivery, or U.S. Express Mail, by agents and employees of the FTC or any state or federal law enforcement agency or by private process server, on Defendant Dion Barron or any other persons or entities that may be subject to any provision of this Order.

## DISTRIBUTION OF ORDER

**XX.** **IT IS FURTHER ORDERED** that within three (3) calendar days after service of this Order, Defendant Dion Barron shall provide a copy of this Order to each of their agents, employees, directors, officers, subsidiaries, affiliates, attorneys, independent contractors, representatives, franchisees, and all persons in active concert or participation with Defendants. Within five (5) calendar days following this Order, Defendant Dion Barron

shall provide the FTC with an affidavit identifying the names, titles, addresses, and telephone numbers of the persons that Defendant Dion Barron has served with a copy of this Order in compliance with this provision.

## CORRESPONDENCE WITH THE FTC

**XXI.** **IT IS FURTHER ORDERED** that, for the purposes of this Order, because mail addressed to the FTC is subject to delay due to heightened security screening, all correspondence and service of pleadings on the FTC shall be sent either via electronic transmission or via Federal Express to: Gregory A. Ashe, Federal Trade Commission, 600 Pennsylvania Avenue, NW, Room NJ-3158, Washington, DC 20580. Email: gashe@ftc.gov; Telephone: (202) 326-3719; Facsimile: (202) 326-3768.

## JURISDICTION

**XXII.** **IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

IT IS SO ORDERED, this ___1ST___ day of ___September___, 2017, at ___2:26___ o'clock p.m.

ROBERT J. CONRAD, JR.
UNITED STATES DISTRICT JUDGE